UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:12-CV-132-F

| | | |
|---|---|---|
| WPB PARTNERS, LLC,<br>Plaintiff | )<br>)<br>) | |
| v. | ) | O R D E R |
| | ) | |
| OLD REPUBLIC NATIONAL TITLE<br>INSURANCE COMPANY,<br>Defendant. | )<br>)<br>)<br>) | |

This matter is before the court on the Defendant's Motion to Transfer Venue [DE-13]. The motion has been fully briefed and is ripe for ruling.

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff WPB Partners (WPB) filed a complaint against Old Republic in state court on March 9, 2012. On March 14, 2012, Old Republic filed its Notice of Removal [DE-1] to this court. The Motion to Transfer Venue [DE-13] was filed on March 23, 2012, and on April 13, 2012, WPB filed its response in opposition. WPB's complaint [DE-1] alleges claims for breach of contract and unfair or deceptive trade practices, and seeks a declaratory judgment. WPB seeks monetary and injunctive relief. Old Republic has filed its Answer and Counterclaim [DE-8], asserting a number of affirmative defenses and alleging counterclaims for fraud, unfair and deceptive trade practices, and equitable subrogation of a mortgage. The court will provide a somewhat detailed summary of the facts underlying these claims,[1] as they are important for purposes of deciding the motion to transfer venue.

---

[1] The facts are drawn exclusively from the Complaint [DE-1], the Answer [DE-8], and the parties's briefing on the instant motion [DE-14, DE-19].

WPB is a Virginia limited liability company with its principal place of business in Richmond, Virginia. WPB is owned and operated by John Marshall ["Marshall"] and it is in the business of purchasing distressed loans or the properties securing distressed loans as investments. Marshall has no employees and two investor partners. However, the two investor partners do not participate in the management of WPB and they are consulted only when a particular transaction exceeds two million dollars.

Old Republic is a Minnesota corporation with its principal place of business located in Minneapolis, Minnesota. Old Republic provides title insurance to real estate purchasers. Title insurance protects real estate purchasers from defects in title and other risks associated with real estate transactions. Old Republic issued the two title policies at issue in this litigation through its subsidiary, The Title Company of North Carolina.

### A. Stephen Rice and the underlying loan obligation purchased by WPB

On February 7, 2006, Stephen Rice entered into a Line of Credit Agreement with Mountain 1st Bank in Asheville, North Carolina. The loan was secured by a deed of trust on Rice's personal residence, located in Buncombe County, North Carolina.[2] Old Republic, through its subsidiary The Title Company of North Carolina, issued a title insurance policy to Mountain 1st insuring the title to Rice's residence. The Title Company of North Carolina's office in Asheville, North Carolina issued the policy. Mountain 1st provided Rice with a $600,000 line of credit.

---

[2] Asheville is located in Buncombe County, and both are in the Western District of North Carolina.

2

In March of 2007, Rice obtained a new loan from Wells Fargo in the amount of $1,950,000.00. This loan was also secured by Rice's personal residence in Buncombe County. Wells Fargo obtained a new title insurance policy from Old Republic insuring the title to Rice's personal residence, through the Asheville office of The Title Insurance Company of North Carolina. Old Republic alleges that Rice obtained the Wells Fargo loan in part for the purpose of refinancing the Mountain 1st line of credit.

Rice hired Asheville attorney George Saenger to assist him in obtaining the loan from Wells Fargo. On April 2, 2007, after Wells Fargo disbursed the funds, Saenger allegedly issued a check to Mountain 1st in the amount of $610,663.17 to pay off the Mountain First line of credit. Saenger allegedly sent a letter with the check directing Mountain 1st to "forward the note and Deed of Trust [for Rice's personal residence] marked 'Paid and Satisfied in Full.' " Br. Supporting Def.'s Mot. to Transfer Venue [DE-14] at 4. Mountain 1st allegedly deposited the check.[3] Unfortunately, none of Saenger, Mountain 1st, Old Republic or Rice followed up to ensure Mountain 1st had cancelled the line of credit or initiated the appropriate steps to have the lien cancelled in the Buncombe County Register of Deeds office. Rice continued to draw on the Mountain 1st line of credit after Mountain 1st deposited the check. In addition, neither the banks nor Old Republic cancelled the title insurance policy for the Mountain 1st line of credit, and as of April 2, 2007, both Mountain 1st and Wells Fargo held active title insurance policies on the title to Rice's residence.

---

[3] WPB disputes that Mountain 1st ever received the check or the letter. In its brief, WPB states, "Upon information and belief, Mountain 1st never received an effective instruction to cancel the line of credit agreement or the 2006 deed of trust." Mem. in Opp'n to Def.'s Mot. to Transfer Venue [DE-19] at 3. The court does not need to resolve this dispute for purposes of deciding the pending motion.

3

## B. WPB's purchase of Rice's Mountain 1st line of credit

In March of 2009, Marshall, the principal owner and operator of WPB, became aware that Mountain 1st was interested in selling the Rice line of credit. Marshall traveled to Asheville to inspect Rice's residence because it served as collateral for the line of credit. Marshall also inspected the recorded mortgages and liens on Rice's property at the Buncombe County Courthouse. Marshall decided to purchase the Rice line of credit, and Mountain 1st assigned the line of credit and the deed of trust to WPB on or about March 16, 2009. Apparently, as the assignee of the Mountain 1st line of credit, WPB also became the policyholder for the title insurance issued by Old Republic in connection with the Mountain 1st line of credit.

WPB also requested an "Endorsement" from Old Republic regarding the title insurance policy on Rice's residence. Title insurance endorsements typically modify or expand a title insurer's liability under an existing policy. *See What Are Title Insurance Endorsements*, MORTGAGEQNA, http://www.mortgageqna.com/mortgage-insurance/title-insurance-endorsements.html (last visited January 30, 2013). WPB requested an Endorsement insuring the Mountain 1st line of credit in first position. Before it would issue the Endorsement, Old Republic required an opinion of title from a licensed North Carolina attorney. After receiving the opinion of title from an attorney located in Asheville, NC, Old Republic issued the requested Endorsement insuring the Mountain 1st line of credit in first position. Meanwhile, Wells Fargo maintained its separate title insurance policy issued by Old Republic on the same property and Wells Fargo assumed that the Mountain 1st loan had been cancelled when Rice took out the Wells Fargo loan.

4

At some point between March 2007 and July 2011, Wells Fargo assigned the rights to its loan to Rice to U.S. Bank as trustee for SASCO.[4] On or about July 29, 2011, Old Republic filed a complaint in the name of U.S. Bank against WPB and others in state court seeking subordination or cancellation of the Mountain 1st line of credit. WPB demanded that Old Republic assume WPB's defense in accordance with the provisions of the insurance policy Old Republic issued to Mountain 1st, which WPB assumed after it purchased the Mountain 1st line of credit. When it became apparent that Old Republic had provided title insurance on the same property to both WPB and U.S. Bank, U.S. Bank dismissed the lawsuit without prejudice. However, U.S. Bank has a pending foreclosure proceeding on Rice's residence in Buncombe County.

In this lawsuit, WPB seeks to enforce the coverage provisions of the Endorsement Old Republic issued to WPB. Specifically, WPB states:

> Old Republic has three alternatives to honor its coverage obligation: (1) to settle with a party other than WPB (here, SASCO) by whatever means are determined between SASCO and Old Republic, so that WPB's first-priority position is no longer challenged by SASCO; (2) to pay or tender payment of the amount of insurance under the policy; or (3) to purchase the indebtedness secured by the insured mortgage for the amount owing thereon.

Compl. [DE-1] at 10. WPB alleges that Old Republic refused to honor these obligations when it attempted to negotiate, and WPB thereafter initiated this action.

### STANDARD OF REVIEW - MOTION TO CHANGE VENUE

Old Republic now moves for a change of venue under 28 U.S.C. § 1404(a). WPB filed

---

[4] The parties do not identify whether SASCO is an acronym for the name of a business entity or the name of the business entity itself. WPB describes the SASCO as "a mortgage loan trust consisting of hundreds of millions of dollars of Wells Fargo mortgage loans." Compl. [DE-1] at 6.

5

the lawsuit in the Eastern District of North Carolina, and it opposes the transfer. 28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." *Id.* The purpose of the statute is to "prevent the waste 'of time, energy, and money,' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quoting *Cont'l Grain Co. v. Barge F.B.L.-585*, 364 U.S. 19, 26, 27 (1960)). A motion to transfer venue requires the court to undertake a "case-specific inquiry that demands a holistic analysis of convenience and justice." *Dacar v. Saybolt*, No. 7:10-CV-12-F, 2011 U.S. Dist. LEXIS 6677, 2011 WL 223877, at *3 (E.D.N.C. Jan. 24, 2011); *Memsys, Inc. v. Act Tech. Seed Fund, L.L.C.*, No. 5:09-CV-516-FL, 2010 U.S. Dist. LEXIS 58895, 2010 WL 2402846, at *2 (E.D.N.C. June 14, 2010).

Assuming the case "may have been brought" in the proposed venue, courts typically analyze the motion using the following factors: (1) the plaintiff's initial choice of venue; (2) the residence of the parties; (3) the ease of access to the sources of proof; (4) the convenience of the parties and the witnesses; (5) the cost of obtaining the attendance of the witnesses; (6) the availability of compulsory process; (7) the possibility of a view by the jury; (8) the enforceability of a judgment; (9) other practical problems that make trial expeditious and inexpensive; (10) the interest in having local controversies decided at home and at home with the state law that governs; and (11) the interests of justice. *Dacar*, 2011 U.S. Dist LEXIS 6677, 2011 WL 223877, at *3; *Memsys, Inc.*, 2010 U.S. Dist. LEXIS 58895, 2010 WL 2402846, at *2; *see also Galustian v. Peter*, 591 F.3d 724, 732 n.7 (4th Cir. 2010) (listing the above factors and differentiating the "public" and "private" factors). In the related *forum non conveniens* cases, a plaintiff's choice of

6

forum is given great weight and should only be disturbed if "the balance is strongly in favor of the defendant." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947); *In re Volkswagon of America*, 545 F.3d 304, 313 (5th Cir. 2008). However, where the initial forum bears no connection to the facts giving rise to the complaint, the plaintiff's choice of forum is given less weight. *Memsys, Inc.*, 2010 U.S. Dist. LEXIS 58895, 2010 WL 2402846, at *3; *Parham v. Weave Corp.*, 323 F. Supp. 2d 670, 674 (M.D.N.C. 2004); *Telepharmacy Solutions, Inc. v. Pickpoint Corp.*, 238 F. Supp. 2d 741, 743 (E.D. Va. 2003).

## ANALYSIS

**A. The case may have been brought in the Western District of North Carolina**

Under § 1404(a), Old Republic must first show that its proposed forum is a district in which the case "might have been brought." 28 U.S.C. § 1404(a). This case might have been brought in the Western District of North Carolina. Because the parties reside in two different states and the amount in controversy exceeds $75,000, the case is properly in federal court based on diversity jurisdiction. 28 U.S.C. § 1332(a)(1); *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). Venue also would have been proper in the Western District because "a substantial part of the events or omissions giving rise to the claim occurred" in the Western District. 28 U.S.C. § 1391. While it is true that the removal statute, 28 U.S.C. § 1441, "trumps" § 1391 in cases of removal and provides that venue is only proper in the district to which the case was removed, that does not change the fact that the case originally could have been brought in the Western District based on § 1391 and diversity jurisdiction. *IHFC Props., LLC v. APA Mktg.*

7

*Inc.*, 850 F. Supp. 2d 604, 613 (M.D.N.C. 2012). Thus, the court finds that the case could have been brought in the Western District of North Carolina.[5]

**B. The "balance of convenience and justice"**

The court now turns to whether the "balance of convenience and justice" weighs in favor of transferring this case to the Western District. *Dacar,* 2011 U.S. Dist LEXIS 6677, 2011 WL 223877, at *2. The court agrees with the parties that the relevant factors in this case include: (1) the plaintiff's initial choice of forum; (2) the ease of access to the sources of proof; (3) the convenience of the parties and the witnesses; (4) the cost of obtaining the attendance of the witnesses and the availability of compulsory process;[6] and (5) the interest in having local controversies decided at home and at home with the state law that governs.[7] The court will address each of these factors seriatim.

**1. Plaintiff's initial choice of forum**

As noted above, the plaintiff's initial choice of forum is entitled to deference and "should rarely be disturbed." *Collins v. Straight, Inc.,* 748 F.2d 916, 921 (4th Cir. 1984); *In re Carefirst*

---

[5] The court notes here that Old Republic has not challenged personal jurisdiction and it has affirmatively requested the Western District. Thus, the court will not analyze whether the Western District would have personal jurisdiction over Old Republic.

[6] While these two factors are frequently listed separately, the court will discuss them together because they are so closely related.

[7] Old Republic also cites the "comparative court congestion and time to trial," as a separate factor the court should consider. *Speed Trac Techs. v. Estes Express Lines, Inc.,* 567 F. Supp. 2d 799, 805 (M.D.N.C. 2008). Old Republic cites the fact that the median time from filing to disposition in civil cases is 7.9 months in the Western district, compared to 8.6 months in the Eastern District. Br. Supporting Def.'s Mot. to Transfer Venue [DE-14] at 22. The court fails to see how a difference of less than one month from filing to disposition weighs in favor of transfer. Old Republic must show a significant difference between districts before congestion will weigh in favor of transfer. *Id.*; *Triad Int'l Maint. Corp. V. Aim Aviation, Inc.,* 473 F. Supp. 2d 666, 671 (M.D.N.C. 2006).

8

*of Maryland, Inc.*, 305 F.3d 253, 260 (4th Cir. 2002); *see also Gulf Oil*, 330 U.S. at 508 (explaining that under the related doctrine of *forum non conveniens*, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."). However, where a plaintiff "(1) chooses a foreign forum [in which neither plaintiff nor defendant reside], or (2) the cause of action bears little or no relation to the chosen forum[,]" the plaintiff's initial choice of forum receives less deference. *Speed Trac*, 567 F. Supp. 2d at 803; *Ion Beam Applications, S.A. v. Titan Corp.*, 156 F. Supp. 2d 552, 563 (E.D. Va. 2000) ("where the plaintiff's choice of forum is a place where neither the plaintiff nor the defendant resides and where few or none of the events giving rise to the cause of action accrued, that plaintiff's choice loses its [] status in the court's consideration."). While the Plaintiff's initial choice of forum may receive less weight in these circumstances, the choice of forum does not become irrelevant. *See Speed Trac*, 567 F. Supp. 2d at 803 (explaining that the plaintiff's choice receives "less weight"); *Memsys, Inc.*, 2010 U.S. Dist. LEXIS 58895, 2010 WL 2402846, at *3 (same).

Here, WPB's choice of venue is accorded less weight. Both parties reside outside the Eastern District of North Carolina. WPB's principal place of business is Richmond, Virginia and its state of incorporation is Virginia. Old Republic's principal place of business is Minneapolis, Minnesota and its state of incorporation is Minnesota. The vast majority of the operative facts in this case occurred in the Western District of North Carolina, including Rice's two loan applications/executions of the deeds of trust, WPB's inspection of the Rice property and its purchase of the Mountain 1st line of credit, and Old Republic's issuance of title insurance on the Wells Fargo loan and the Mountain 1st line of credit. Thus, it appears WPB's choice of forum is entitled to less weight.

9

However, the court will not entirely disregard the plaintiff's choice of forum in this case. The cases where a plaintiff's choice of forum becomes neutral typically involve a plaintiff choosing a state in which none of the operative events took place and where none of the parties reside and often involve great distances between the fora. *See, e.g., Dacar,* 2011 U.S. Dist. LEXIS 6677, 2011 WL 223877, at *3 (requesting transfer from North Carolina to Texas); *Memsys, Inc.,* 2010 U.S. Dist. LEXIS 58895, 2010 WL 2402846, at *2 (requesting transfer from North Carolina to Texas); *see also Galustian,* 591 F.3d at 731-32 (requesting transfer from Virginia to Iraq on *forum non conveniens* grounds). Here, WPB chose a district in the state in which the operative facts occurred and the defendant seeks to transfer districts within that state. In this circumstance, while the deference afforded plaintiff's choice of forum is diminished, the court concludes that it still weighs against transfer.

The court notes that Old Republic anticipated this reasoning in its brief, and it cites to several cases that were transferred between districts in the same state. *Speed Trac,* 567 F. Supp. 2d at 806 (transferring from Middle District to Western District of North Carolina); *Corbett v. McHugh,* 2011 U.S. Dist. LEXIS 146592, 2011 WL 6370997, at *3 (M.D.N.C. Dec. 20, 2011) (transferring case from Middle District to Eastern District of North Carolina); *Ward v. Invista S.A.R.L., LLC,* 385 B.R. 817, 823 (Bankr. W.D.N.C. 2008) (transferring case from Western District to Eastern District of North Carolina). In *Speed Trac,* for example, the court transferred the case from the Middle District of North Carolina to the Western District, noting "the causes of action bear little or no relation to the chosen forum . . . [and] the parties have identified no witness who resides, or evidence located, in the Middle District." *Speed Trac,* 567 F. Supp. 2d at 803.

10

Here, as in *Speed Trac*, the operative facts occurred in the Western District and the majority of the witnesses and the evidence are also located in the Western District. WPB acknowledges these facts in its brief, but insists that it prefers to be in the Eastern District. Apparently, the Eastern District is closer to WPB's principle place of business in Richmond, Virginia, and John Marshall, WPB's chief officer, frequently travels to the Eastern District on business. WPB states that it is prepared to complete all the necessary depositions in the Western District and collect all the relevant documents from the Western District. Where a plaintiff is prepared to conduct all the depositions in the defendant's proposed forum and collect all the relevant documents from that forum, the court will not disregard the plaintiff's choice of forum, especially when the Eastern District is more convenient to the plaintiff and the plaintiff has chosen a district in the state where the operative events took place. Thus, WPB's choice of forum weighs against transfer to the Western District.

**2. The ease of access to the sources of proof**

This factor weighs in favor of transfer. Courts will frequently transfer cases "if no witness or evidence is within the chosen district." *Id.* at 804; *Nutrition and Fitness, Inc. v. Blue Stuff, Inc.*, 264 F. Supp. 2d 357, 363 (W.D.N.C. 2003). However, as noted above, WPB is willing to collect the relevant documents from the Western District and depose the relevant witnesses in the Western District, and then bring that evidence to the Eastern District. The court also notes that much of the relevant evidence will be document-based and current electronic storage techniques make the physical location of the documents less relevant. *Dacar*, 2011 U.S. Dist. LEXIS 6677, 2011 WL 223877, at *7. Thus, while this factor weighs in favor of transfer, it does so only marginally.

11

### 3. The convenience of the parties and the witnesses

Old Republic argues that the convenience to the parties is "neutral" because both parties' corporate headquaters are located out of state. Br. Supporting Def.'s Mot. to Transfer Venue [DE-14] at 17. WPB counters that this factor favors keeping the case in the Eastern District because the Eastern District is geographically closer to WPB's principle place of business and Marshall frequently travels to the Eastern District on business. Mem. in Opp'n to Def.'s Mot. to Transfer Venue [DE-19] at 11. Because WPB has agreed to conduct much of the discovery in the Western District, the court fails to see how WPB's contacts with the Eastern District make this forum significantly more convenient. In the event of trial, and for purposes of status conferences/other hearings, the Eastern District is slightly closer and more convenient to WPB and thus this factor weighs against transfer to the Western District.

Turning to the convenience of the witnesses, Old Republic argues that this factor should be dispositive. Virtually all of the nonparty potential witnesses, including Rice, the relevant officers of Mountain 1st and Wells Fargo, and Rice's closing attorney George Saenger, reside in the Western District. In the event of trial, the Western District is obviously more convenient for these witnesses. Old Republic also maintains that courts generally consider the convenience of the witnesses to be the most important factor in the transfer of venue analysis. *North Carolina v. Blackburn*, 2007 U.S. Dist. LEXIS 92131, 2007 WL 4458302, at *3 (E.D.N.C. Dec. 14, 2007) ("Often cited as the most important factor . . . is the convenience of the witnesses, most particularly nonparty witnesses who are important to resolution of the case" (quoting 15 Charles Alan Wright, et al., *Federal Practice and Procedure* § 3851 (3d ed. 2007)); *Laureate Educ., Inc. v. Megahed*, 2010 U.S. Dist. LEXIS 65709, 2010 WL 2651895, at *10 (D. Md. July 1, 2010).

While the court acknowledges that this factor weighs in favor of transfer, the court disagrees that this factor is "the most important" in venue transfer analysis. First, treating the convenience of the witnesses as the most important factor is arguably contrary to the Supreme Court opinion in *Gulf Oil*. In *Gulf Oil*, the Supreme Court concluded that "unless the balance [of these factors] is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil*, 330 U.S. at 508; *see also Collins*, 748 F.2d at 921 (explaining that a plaintiff's choice of forum should "rarely be disturbed" in a change of venue case). The court concludes that the plaintiff's choice of forum, rather than the convenience to the witnesses, is the most important factor in the analysis.

Furthermore, while this factor favors transfer, it does so only slightly. WPB has indicated that it will travel to the Western District to conduct all relevant depositions and collect the documents. Thus, the only inconvenience to the nonparty witnesses with respect to maintaining this case in the Eastern District is that they may be subpoenaed for trial. And WPB has chosen a district in the same state where most of the nonparty witnesses reside. The court acknowledges that in the event of a trial, some of the witnesses will be inconvenienced by having to travel from the Western District to the Eastern District. However, the fact that the witnesses will have to travel within the same state for approximately five or six hours does not heavily favor transfer from the Eastern District to the Western District.

**4. The cost of obtaining the attendance of the witnesses and the availability of compulsory process**

As WPB notes in its brief, this court may compel attendance of nonparty witnesses located in the Western District in the event of trial because the Eastern District and the Western

13

District are in the same state. Fed. R. Civ. P. 45(c)(3)(ii). Thus, the availability of compulsory process neither favors nor disfavors transfer.

The cost of obtaining the attendance of witnesses does favor transfer because the witnesses would have to travel longer distances and may need hotel accommodations if the trial is held in the Eastern District. Of course, the cost is not substantially higher because the witnesses all reside within North Carolina and neither party will have to provide airfare.

**5. The interest in having local controversies decided at home and at home with the state law that governs**

In general, litigation should take place in the judicial district that is most closely connected to the operative facts. *In re Volkswagon of America*, 545 F.3d at 317-18; *Speed Trac*, 567 F. Supp. 2d at 804. Courts have also explained that jury duty "is a burden that ought not be imposed upon people of a community which has no relation to the litigation." *Galustian*, 591 F.3d at 732 n.7 (quoting *Gulf Oil*, 330 U.S. at 508-09).

The court finds that the Western District does not have a particularly stronger interest in the outcome of this litigation than the Eastern District. While it is true that the loans to Rice occurred in the Western District and the property securing the loans is located in the Western District, the "controversy" in this case involves an insurance contract dispute between two out-of-state residents, both of whom apparently do business throughout the state. In addition, North Carolina state law governs this dispute and WPB's initial choice of venue is a district within North Carolina. The court finds that this factor neither favors nor disfavors transfer.

In sum, the court will DENY Old Republic's motion to transfer venue. While several factors may weigh slightly in favor of transfer here, these factors do not overcome the weight of

WPB's choice of venue. WPB's choice of venue is given less weight because it chose to file this case in a forum possessing a limited connection to the operative facts. However, because WPB is willing to conduct relevant discovery in the Western District and thus the inconvenience to the witnesses will be minimal, the court will not disturb's WPB's choice. The court also notes that Old Republic has already frustrated the plaintiff's choice of forum by removing this case to federal court. The court is reluctant to further disturb WPB's geographical preference after Old Republic has already removed the case and where WPB has chosen a forum within the state in which the operative events took place.

## CONCLUSION

For the foregoing reasons, Old Republic's Motion to Transfer Venue [DE-13] is DENIED. The clerk of court is DIRECTED to continue management of this case in the Eastern District.

SO ORDERED.
This the 31st day of January, 2013.

JAMES C. FOX
Senior United States District Judge